**IN THE UNSTED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**UNITED STATES OF AMERICA**

**V.** **CRIMINAL NO. 4:05CR48WTN-AGN**

**MARZETT JORDAN**

**STATEMENT OF FACTS AND ARGUMENTS IN DISPUTE OF GOVERNMENTS ASSUMPTION OF RENTAL PROPERTIES OWNED BY SPENCER JORDAN**

**COMES NOW,** Marzett Jordan and files this his Statement of Facts and Arguments in Dispute of Governments Assumption of Rental Properties states as follows:

1. Spencer Jordan, along with his attorney, has addressed this issue during the several times he appeared before the court for hearings during his incarceration and stated that he does not own any rental properties and has nothing to do with them.

2. The Government during all of its years of investigating has no evidence of the real owner, Marzett Jordan, ever stating that the properties were not his. Furthermore, they don't have any evidence of Spencer stating that he owned properties, other than a handful of inmates that would do whatever they had to do to get released from jail and some of whom have violated probation repeatedly. Rodney Boler, the Government's witness and Spencer's co-defendant, stated that although he did see Spencer at a property on occasion, Spencer didn't talk to him about any property. This raises suspicion about the testimony of the other inmate witnesses who stated that Spencer told them he was buying property in his brother's name. First, its very peculiar that the person inside Spencer's circle has never heard Spencer speak about owning rental property, but

the "rival" drug dealers and distant acquaintance have more information than him. Also, how is he purchasing property in his brother's name when the bank is purchasing it?

3. During the Government's search and seizure of items from Spencer's residence at the time of his arrest, they did not recover one single document that would relate to Spencer owning a piece of real property, not even a receipt for all the alleged expensive repairs. Any legitimate owner would keep records of his possessions, or at least receipts or copies of documents that may be required as a result of day to day operations.

4. There is no evidence that Spencer received $1 of rental income from any of the properties. Every tenant that appeared before the court confirmed this fact. All income from the properties are filed by Marzett Jordan. The Government says that Spencer is the owner of all of those properties simply by assisting the appraiser in locating and inspecting the property and bidding on the property for Marzett, who was a full-time employee. The testimony of Roy White, Delta Barfoot (USDA-Rural Development), and Timothy Baker (USDA-Rural Development) will confirm that the actual buyer doesn't have to be present at the auction. Mr. White testified that he attends auctions for his son William and that this is not something unsual. Mrs. Barfoot and Mr. Baker testified that Marzett would notify the office before the auctions that someone would be attending to bid for him while he was at work. The testimony of Mike Tinsley is somewhat misleading as if he were in favor of the Government instead of the truth. Mr. Tinsley said that he never dealt with Marzett Jordan for any reason other than the appraisal of his residence, but in fact, was shown a copy of a cashier's check made out to this office from Marzett Jordan. Mr. Tinsley, along with his assistant, also came by Marzetts place of employment to discuss bidding on a house located at 313 Front Street in which he was the realtor appointed to accept sealed bids for. Mr. Tinsley's photo technique is also peculiar. If you look

at his appraisal photos, particularly at 428 Austin and 245-C Adams, he seems to wait until Spencer is walking in the camera's line of sight to snap the photo. This action seems unusual, unless there was a motive. Mr. Tinsley also was misleading with his testimony of the appraisal that was made in the name of Spencer Jordan. Mr. Tinsley was asked to put the appraisals in the name of Marzett Jordan in the future because he was the actual purchaser. Since the appraisal only places a value on the property and has nothing to do with the actual purchase or ownership of the property, the bank proceeded with the loan with no problem. Had there been a conspiracy in place to "put properties in his brother's name", as the Government insists, then that appraisal would have never existed.

**FACTS AND ARGUMENTS IN DISPUTE OF THE GOVERNMENT'S ASSUMPTION THAT SPENCER JORDAN FUNDED THE DOWN PAYMENTS:**

1. Other than the $5,000 and $1,500 down payments that the Government assumes were paid by Spencer since they could not trace it to one single source, there is no argument as to how nearly $500,000 of property was purchased. The payments amount to 1%, but the Government wants the court to believe this is some kind of major conspiracy to hide drug funds.

2. The Government only based its investigation on Marzett Jordan's income from his job as a bank employee. The other sources to make it possible to make these down payments as well as the $8000 to purchase the land for my personal residence came from a $4,000 credit card cash advance, the sale of a 2000 Honda CBR600 motorcycle, the sale of a 1985 Jeep Cherokee, and also a 1988 Jeep Cherokee. If the Government was looking for the truth, they could trace the sell of these vehicles easily. Most importantly, the Government didn't consider Marzett's spouse's income during that period. Though they filed tax returns separately, they were still legally married and supported each other, which also probably means she has interest in the properties.

There was also other jobs performed part-time on the side for cash sometimes.

    3.   The Government has no evidence whatsoever suggesting that Spencer funded the down payments on any of the properties in question.

    4.   The Government not only alleges that Spencer Jordan paid the down payments, but also that the down payments were made to help boost Marzett Jordan's credit in order to purchase more property in the future. If the Government would compare Marzett's credit score from before purchasing rental property to his current credit score, that theory could easily be disproved because his score was in the mid seven hundreds (700's) before he even started purchasing property. The Government does have a copy of Marzett's credit report from that time. Finally, Marzett was required to have average credit to hold his position as lead teller at the bank where he was employed.

    5.   The Government's witness, Sarah Davidson, testified that the down payments made on the two initial properties made it possible to get full financing on the rest of them. The two properties after those were financed at National Bank of Commerce, a totally different bank. NBC would have no knowledge of cash being paid down on a loan at The Citizens Bank. Also, there had not even been enough time to file a tax return to show any rental income, so how could the next loans be based on income from the first two. There were five other properties bought after the initial two before the tax year ended. The Government says that no rental income was even shown on Marzett Jordan's 1998 Tax Return, so that means there was no rental income to show the banks until the end of 1999. Therefore, the income from the two initial properties could not have any bearing on why the other properties were financed.

**FACTS AND ARGUMENTS IN DISPUTE OF THE GOVERNMENT'S ASSUMPTION THAT SPENCER JORDAN FUNDED THE REPAIRS AT THE RENTAL PROPERTIES:**

     1. The Government has no evidence whatsoever supporting their claim that Spencer paid for repairs to rental properties.  They only have inmates that would say whatever they had to say to get released from prison early.  Their only documented argument is that a receipt submitted for evidence by Marzett Jordan had the first couple of letters in Spencer's name written on it and then scratched through, which can easily be explained.  Many people in the town of Philadelphia sometimes are mistaken by two brothers because of how much they favor each other.  If there was any kind of criminal intent, this receipt could have easily not been shown.  The Government also did not interview the person who wrote the receipt, so they would not know what the situation was with the receipt. The blue ink addresses written on the receipts were written by Marzett Jordan to distinguish which property they were for and what files to return them to when done.

     2. The Government had a couple of witnesses from the local building supply companies, Steve Breland and Stan Yates, who testified that they didn't see Marzett Jordan until he was constructing his house or did not see him at all.  They testified that Spencer Jordan was a regular customer and visited their stores frequently, but there is no proof of what he purchased, what for, or how much it costs.  The explanations for this is that they couldn't see Marzett Jordan on a regular basis since he worked basically the same hours as the two witnesses.  Furthermore, the building supply office most frequently used for material was Jim Sharp Building of Philadelphia.  Marzett also had credit accounts with West Building Supply of Meridian, MS and Marvin's of Meridian, MS.  The Government could have easily verified these accounts by looking on Marzett's credit report.  The Government does have a copy of Marzett's credit report from that time.

3. Many of the repairs made to the properties were minor or not nearly as expensive as the Government is alleging. The Government wants to use the estimated repair figures on the appraisals done by Mike Tinsley and by Rural Development, but these estimates don't represent what was actually done at any property as confirmed by the testimony of Tim Baker of USDA Rural Development. The repairs were usually paid for with rent deposits, monthly rent payments, small personal loans, or insurance claim payments. Many properties were not even repaired at all, but were purchased so the owner being foreclosed upon could remain in their home.

4. The Government says that Spencer Jordan has never worked a steady job during his lifetime and that he only been a drug dealer. But, they also want to say he is capable of making all of these very expensive home improvements. Where did he learn how to do these tasks if he never had a job or training? Was it natural talent? Did he have help? Why weren't the people who completed these jobs contacted and interviewed? Where is their testimony? Government's witness, Greg Huddleston, testified Spencer hired him to repair drywall at the Barham property. What evidence does the Government have that Greg Huddleston has ever worked as a handyman or even worked at all? The Government wants the court to believe all of these costly repairs were made, but with no proof of it.

5. The Government wants to argue that Marzett Jordan showed little or no expenses on certain tax returns, and the answer is simple…If the expense or repair didn't occur it was not reported.

6. Sarah Davidson, IRS agent, stated to Marzett Jordan during an interview at the Neshoba County Detention Center on April 28, 2004 that "it doesn't take much to fix up these little houses. I know because I have houses in Jackson". This is a fact and it can be proven easily if the Government is willing to submit this taped interview to the court.

**FACTS AND ARGUMENTS IN DISPUTE OF THE GOVERNMENT'S ARGUMENT THAT FINANCIAL REPORTS WERE USED TO DEFRAUD BANKS FOR MORE CREDIT AND TO RENEW EXISTING LOANS:**

1. The Government argues that the cash funds shown on financial statements submitted to The Citizens Bank, National Bank of Commerce and Citizens National Bank were entered to defraud the bank in order to get further credit and/or renew existing loans. If the Government would look at the dates on the financial statements, it could easily see that when financial statements were issued to The Citizens Bank and National Bank of Commerce, all of the loans were already made and no further loans were requested. In addition, all of the loans at National Bank of Commerce were amortized for 15 years and would not have to be renewed at all. The testimony of Tommy Williams and Scott Hines, both of National Bank of Commerce, would confirm that entering the amount from the account in question on the financial statements was the correct thing to do. Further, the account in question was at National Bank of Commerce, so the loan officer would see it anyway when Marzett's account screen was pulled. The cash on hand amount on the financial statements are not a big factor in getting a loan approved or renewed. If it were used to secure a loan, the bank would place a hold on the funds until the loan was paid. Otherwise, it can be withdrawn at any time and would not benefit the bank in any way. The most important factors in getting approved for a loan are credit score, debt/income ratio, and the value of the property being used as collateral.

2. Please compare loan renewal dates from the list of properties with copies of most recent financial statements submitted, and this will prove that the cash shown on the financial statements have no significant influence on loan approval or renewal.

**FACTS ABOUT THE CHECKING ACCOUNT HELD AT NATIONAL BANK OF COMMERCE BY ANNIE MAE JORDAN AND MARZETT JORDAN:**

1. Annie Mae Jordan deposited her personal payroll checks into this account on a monthly basis. She also sometimes deposited her tax refunds into this account. She wrote checks from this account on a daily basis for her own personal use, and this can be verified. So, the Government's theory that the funds in this account were totally Spencer's is false, and it can be proven, no matter what has been said. Mrs. Jordan had no other checking account to use at that time.

2. No funds from this account were used toward any of the rental property, and no rental income was deposited into it.

3. Marzett Jordan was added to this account years later than when Annie Mae Jordan opened the account. This can be proven by checking the dates on the signature card.

**(SEE ATTACHED PROPERTY LIST)**

RESPECTFULLY SUBMITTED, this the 25th day of July, 2013.

**MARZETTE JORDAN**

BY:/s/ Dennis C. Sweet, III
Dennis C. Sweet, III

**OF COUNSEL:**
DENNIS C. SWEET, III
SWEET & ASSOCIATES
158 E. PASCAGOULA STREET
JACKSON, MS 39201
PH:601.965.8700
FX:601.965.8719

**CERTIFICATE OF SERVICE**

I, Dennis C. Sweet, III, hereby certify that on July 25, 2013, I electronically filed a true and correct copy of the foregoing pleading to:

Carlos Tanner, AUSA
United States Attorney's Office

The Honorable Henry T. Wingate
United States District Court Judge

THIS, the 25th day of July, 2013.

/s/ Dennis C. Sweet, III
Dennis C. Sweet, III